SHELL ET AL., APPELLEES, ET AL. *v.* OHIO VETERINARY
MEDICAL LICENSING BOARD, APPELLANT.

[Cite as *Shell v. Ohio Veterinary Med. Licensing
Bd.,* 105 Ohio St.3d 420, 2005-Ohio-2423.]

(No. 2004–0253—Submitted February 15, 2005—Decided June 1, 2005.)

ALICE ROBIE RESNICK, J.

{¶ 1} This appeal requires us to construe R.C. 4741.26(A)'s provision that appellant, Ohio Veterinary Medical Licensing Board, must give five days' written notice before inspecting a place of business connected with the practice of veterinary medicine. For the reasons that follow, we affirm the judgment of the court of appeals that the notice provision is applicable in this case.

{¶ 2} The board, through letters dated March 16, 1999, notified appellees, Scott D. Shell, D.V.M., and Douglas Paroff, D.V.M., that they were charged with violations of Ohio statutes and administrative rules regarding their treatment of race horses with anabolic steroids. The letters stated that, after an investigation, the board had determined that the veterinarians had committed two separate violations: (1) administering anabolic steroids for nontherapeutic purposes and (2) failing to maintain appropriate medical records for the treated horses.

{¶ 3} The letters further informed the veterinarians of the opportunity to request a formal hearing to contest the charges. At their request, a hearing was held on five dates in January and April 2000. After taking testimony from witnesses and reviewing the evidence and arguments, the hearing examiner issued a detailed report and recommendation to the board, with extensive findings of fact and conclusions of law, on May 1, 2001.

{¶ 4} The hearing examiner recommended that the board dismiss the charges regarding administration of anabolic steroids, finding that those charges had not been proven. The hearing examiner concluded, however, that the board had

proven that the veterinarians violated the record-keeping requirements of the Ohio Administrative Code, finding that the records did not include all of the information required. The hearing examiner recommended that the veterinarians' licenses be suspended for ten days, with the suspensions stayed, provided the veterinarians complete a one-year probationary period, with additional conditions.

{¶ 5} In an order dated July 20, 2001, the board fully adopted the hearing examiner's findings of fact, conclusions of law, and recommended sanction. The veterinarians appealed the ruling, and the Geauga County Court of Common Pleas affirmed the board's order.

{¶ 6} On appeal to the court of appeals, the veterinarians raised two assignments of error—the first, a due-process challenge asserting that it is unfair to apply the record-keeping rule to racetrack-horse veterinarians, and the second, an argument in part urging that the board's order was void because an inspection had been conducted without prior notice in violation of R.C. 4741.26(A).

{¶ 7} The Eleventh District Court of Appeals unanimously reversed the trial court judgment on the veterinarians' second assignment of error, concluding that R.C. 4741.26(A) requires that the board "give a licensed veterinarian five days notice before inspecting a place of business, even if the inspection is in conjunction with an investigation." The court of appeals held that the first assignment of error was moot in light of its ruling on the second and remanded the cause to the trial court, instructing that court "to determine what effect the failure to give [the veterinarians] prior notice of the inspection had on the sustainability of the accusations for which [the veterinarians] were disciplined."

{¶ 8} The cause is now before this court pursuant to our acceptance of the board's discretionary appeal.

{¶ 9} The sole issue presented is whether R.C. 4741.26(A) requires the board to give five days' written notice prior to conducting an inspection of a licensed veterinarian's place of business when that inspection is part of an investigation. The board readily concedes that it did not give the veterinarians five days' notice but contends that when, as here, an inspection is part of a surprise investigation, the terms of R.C. 4741.26(A) clearly allow the board to inspect without providing notice.

{¶ 10} R.C. 4741.26(A) provides:

{¶ 11} "The state veterinary medical licensing board shall enforce this chapter and for that purpose shall make investigations relative thereto. Except as provided in this division, in making any inspection pursuant to this chapter, the board may enter and inspect, upon written notice of not less than five days and during normal business hours, any licensee's, permit holder's, or registrant's place of business. If the board has knowledge or notice, pursuant to a written

complaint or any other written knowledge or notice by any person as verified by the signature of that person, of a violation of section 4741.18, 4741.19, or 4741.23 of the Revised Code, it shall investigate and, upon probable cause appearing, shall direct the executive secretary to file a complaint and institute the prosecution of the offender. In conducting any investigation for a suspected violation of this chapter, the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation and the board or its authorized agent provides the licensee, permit holder, or registrant with a copy of the authorization at the time of the investigation."

{¶ 12} The above statute clearly provides that prior to conducting an *inspection*, the board must provide five days' written notice, subject to whatever exceptions appear later in the statute. Furthermore, the statute also clearly provides that when conducting an *investigation*, the board need not provide notice. The words "inspection" and "investigation" are not defined in R.C. Chapter 4741.

{¶ 13} In concluding that five days' written notice is required even when an inspection is part of an investigation, the court of appeals stated:

{¶ 14} "R.C. 4741.26(A) clearly provides that '[e]xcept as provided in this division, in *making any* inspection pursuant to this chapter, the board may enter and inspect, *upon written notice of not less than five days and during normal business hours,* any licensee's, permit holder's, or registrant's place of business.' (Emphasis added.) The section of the statute relied upon by [the board] never mentions inspections; rather, it simply states that *'[i]n conducting any investigation for a suspected violation of this chapter,* the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation and the board or its authorized agent provides the licensee, permit holder, or registrant with a copy of the authorization at the time of the investigation.' (Emphasis added.)

{¶ 15} "If this court were to interpret R.C. 4741.26 in the manner proposed by [the board], we would be adding language to the statute that does not exist. *State ex rel. Purdy v. Clermont Cty. Bd. of Elections,* 77 Ohio St.3d 338, 340, 1997-Ohio-278 [673 N.E.2d 1351]. This court also would be required to interpret the terms 'inspection' and 'investigation' as being interchangeable, which, even according to [the board], they clearly are not. *Kimble v. Kimble,* 97 Ohio St.3d 424, 2002-Ohio-6667 [780 N.E.2d 273] at ¶ 6 (holding that an undefined term in a statute 'must be afforded its plain and ordinary meaning')."

{¶ 16} The board strongly disagrees with the reasoning of the court of appeals. The board urges us to adopt the hearing examiner's interpretation of R.C. 4741.26, which is set forth below:

{¶ 17} "R.C. 4741.26(A) provides for three separate types of inspections and/or investigations by [the board]. First, the statute authorizes what are generally known as 'compliance inspections.' These inspections require five days written notice to the veterinarian that [the board], or its investigator, may enter the veterinarian's office during normal business hours to conduct an inspection to ensure compliance with all applicable laws.

{¶ 18} "Next, R.C. 4741.26(A) provides that [the board] may investigate alleged violations of R.C. 4741.18, R.C. 4741.19, or R.C. 4741.23 upon a written complaint or other written knowledge or notice by any person. R.C. 4741.18, R.C. 4741.19, and R.C. 4741.23 address the unlawful practice of veterinary medicine and specific prohibitions against licensed veterinarians. All three statutes carry criminal penalties. See R.C. 4741.99. Investigations of these potential crimes by [the board] require a prior written complaint or other writing signed by a person filed with [the board].

{¶ 19} "Finally, R.C. 4741.20(A) [sic, R.C. 4741.26(A) ] provides that [the board] may investigate matters involving alleged violations of R.C. Chapter 4741 or the Rules of [the board]. R.C. 4741.26(A) provides that no prior written notice need be given to the licensee, but only that written authorization for the investigation be provided to the licensee at the time of the investigation by [the board] or its authorized agent."

{¶ 20} In line with the hearing examiner's view, the board urges that since the inspection in this case was conducted as part of a surprise investigation and was not simply a compliance inspection, the board was not required to provide the five days' written notice. The court of appeals rejected this interpretation of the statute.

{¶ 21} It appears that the First District Court of Appeals is the only other appellate court that has considered the issue in this case. In *Ohio Veterinary Med. Bd. v. Singh* (1998), 127 Ohio App.3d 23, 711 N.E.2d 740, that court determined that when an inspection is conducted as part of an investigation, contemporaneous notification suffices. The court stated, "The element of surprise is obviously an important factor in conducting investigations to determine whether a veterinarian has violated a provision in R.C. Chapter 4741." Id. at 29, 711 N.E.2d 740.

{¶ 22} The court of appeals in the case sub judice specifically took issue with the *Singh* court's interpretation of the inspection-notice provision of R.C. 4741.26(A):

{¶ 23} "We understand that the element of surprise is important when conducting an investigation. However, our reading of R.C. 4741.26 leads this court to conclude that [the board] must give a licensed veterinarian five days notice before inspecting a place of business, even if the inspection is in conjunction with an investigation.

{¶ 24} "* * *

{¶ 25} "The language in R.C. 4741.26 is clear and unambiguous. The statute prohibits inspections of a place of business conducted without five days prior notice. Also, R.C. 4741.26 does not provide an exception for inspections conducted as part of an investigation. Accordingly, if [the board] needs to inspect a place of business as part of an investigation, it must give the licensed veterinarian five days prior notice. Stated differently, while [the board] is not obligated to give advance notice that an investigation is underway, [the board] must give prior notice of any inspection conducted as part of that investigation.

{¶ 26} "Obviously, notice may give an unscrupulous person an opportunity to conceal or otherwise dispose of evidence. This is, unfortunately, an issue for the General Assembly to remedy, as we are limited to interpreting R.C. 4741.26(A) as written."

{¶ 27} The board focuses especially on the words "[e]xcept as provided in this division" to dispute the court of appeals' interpretation of R.C. 4741.26(A)'s notice provision. The board urges that if the portion of the statute expressly dispensing with the notice requirement for an investigation is not read as an exception to the notice requirement for an inspection, then the "[e]xcept as provided" language becomes an "unfulfilled promise."

{¶ 28} The board's position on this point has some appeal, principally because if we hold, as the court of appeals did, that the express exception to the notice requirement for investigations does not apply to inspections, then there is no exception to follow up on the statement "[e]xcept as provided in this division."

{¶ 29} For that reason, it does seem plausible, perhaps even probable, that the General Assembly did intend the notice provision not to apply when the board conducts investigatory inspections. However, the strongest indication of the General Assembly's intent is the language it uses in a statute. See *Storer Communications, Inc. v. Limbach* (1988), 37 Ohio St.3d 193, 194, 525 N.E.2d 466; *State ex rel. Foster v. Evatt* (1944), 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265, paragraph seven of the syllabus ("The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact").

{¶ 30} This case distills to two fairly simple competing positions. On the one hand, in the veterinarians' favor, R.C. 4741.26(A) firmly states that five days' written notice is required for an inspection. When coupled with the fact that

there is clearly a difference between an inspection and an investigation (even if the two are related, and even accepting the board's premise that an inspection is an integral part of an investigation), the statute obviously is not a model of clarity if it is supposed to remove investigatory inspections from the ambit of the notice requirement.

{¶ 31} On the other hand, as the board points out, a peculiar consequence that results from holding that the notice provision applies to all inspections is the "unfulfilled promise" of the exception that is mentioned in the second sentence of the statute. The board also suggests that another peculiar consequence is that if the exception to the notice requirement for an investigation does not apply to an investigatory inspection, then the statute permits the board to begin an investigation with no advance notice but requires the board to provide five days' written notice before conducting an inspection as part of that surprise investigation. However, we are not convinced that this result is peculiar. Because an inspection is generally more intrusive than an investigation, it is conceivable that the General Assembly may have determined that a more stringent notice requirement is appropriate for an inspection even when that inspection is connected to a surprise investigation.

{¶ 32} Upon weighing these competing positions, we feel constrained to hold, as did the court of appeals, that R.C. 4741.26(A) simply does not except investigatory inspections from the ambit of the notice requirement. The board has only those powers explicitly delegated by statute and must operate within whatever limitations are contained within its enabling statutes. See *Johnson's Mkt., Inc. v. New Carlisle Dept. of Health* (1991), 58 Ohio St.3d 28, 36, 567 N.E.2d 1018; *Ohio Cent. Tel. Corp. v. Pub. Util. Comm.* (1957), 166 Ohio St. 180, 182, 1 O.O.2d 464, 140 N.E.2d 782 (an administrative body may exercise only the powers and authority conferred by the General Assembly).

{¶ 33} Furthermore, as the court of appeals stated:

{¶ 34} "When interpreting statutes, courts must give due deference to those interpretations by 'an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility.' *Weiss v. Pub. Util. Comm. of Ohio*, 90 Ohio St.3d 15, 17–18, 2000-Ohio-5 [734 N.E.2d 775]. Nevertheless, '[i]f the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate.' *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584 [651 N.E.2d 995]."

{¶ 35} Finally, the veterinarians urge this court to consider their due-process arguments regarding the record-keeping requirements and invite this court to reverse the trial court's judgment on those alternate grounds. Those arguments were found moot by the court of appeals and not addressed. We likewise decline to address them.

{¶ 36} Based on all of the foregoing, we find that the notice given for the inspection in this case was deficient. We affirm the judgment of the court of appeals, including the instructions on remand to the common pleas court.

Judgment affirmed.

MOYER, C.J., PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., dissent.

————————

**LANZINGER, J., dissenting.**

{¶ 37} I must dissent. On the one hand, the majority finds R.C. 4741.26(A) to be clearly written but then says that there are two competing views of the statute's meaning. Such patent ambiguity calls for interpretation.

{¶ 38} When interpreting a statute, we must read the statute as a whole rather than take single sentences out of context. R.C. 4741.26(A) provides:

{¶ 39} "The state veterinary medical licensing board shall enforce this chapter and for that purpose shall make investigations relative thereto. *Except as provided in this division,* in making any inspection pursuant to this chapter, the board may enter and inspect, upon written notice of not less than five days and during normal business hours, any licensee's, permit holder's, or registrant's place of business. If the board has knowledge or notice, pursuant to a written complaint or any other written knowledge or notice by any person as verified by the signature of that person, of a violation of section 4741.18, 4741.19, or 4741.23 of the Revised Code, it shall investigate and, upon probable cause appearing, shall direct the executive secretary to file a complaint and institute the prosecution of the offender. *In conducting any investigation for a suspected violation of this chapter, the board* or its authorized agent *does not have to provide any prior written notice* to the licensee, permit holder, or registrant *as long as the board provides a written authorization for the investigation* and the board or its authorized agent provides the licensee, permit holder, or registrant with a copy of the authorization at the time of the investigation." (Emphasis added.)

{¶ 40} First, the statute gives the board overall responsibility to make investigations to enforce the chapter. As a routine matter, inspections are to be done only after notice is provided, but there is an exception to the five-day notice requirement. The third sentence, although not involved in this case, explains that the board has the power to investigate upon a complaint for violations of R.C. 4741.18 (fraud in obtaining a license), R.C. 4741.19 (unlawful veterinary practice), or R.C. 4741.23 (specific prohibitions). Furthermore, the statute provides that no prior written notice is required for investigations of suspected violations of the chapter as long as, at the time of the investigation, written

authorization is provided. Such authorization seems to be in the nature of an administrative search warrant, and thus, some inspections will be unexpected when they are part of investigations based upon a suspected violation.

{¶ 41} The two words "investigation" and "inspection" are not statutorily defined. The word "investigate" means "to observe or study closely: inquire into systematically: examine, scrutinize." Webster's Third New International Dictionary (1986) 1189. The word "inspect" means "to view closely and critically * * *: examine with care: scrutinize." Id. at 1170. An investigation, being the broader term, necessarily includes the ability to inspect. It defies common sense to say that the board can "investigate" without notice but cannot "inspect" premises as part of that investigation unless it gives five days' notice beforehand.

{¶ 42} The majority concludes that "[b]ecause an inspection is generally more intrusive than an investigation, it is conceivable that the General Assembly may have determined that a more stringent notice requirement is appropriate for an inspection even when that inspection is connected to a surprise investigation." Nothing supports such a statement—in or outside of the record.

{¶ 43} The concern that the board may somehow overuse the power to inspect without notice is mistaken. There is a safeguard built in that requires a verified complaint or a signed writing before the board is allowed to investigate specified statutory violations. For any inspection without notice as part of an investigation, written authorization must be presented.

{¶ 44} In short, I agree with the reasoning expressed in *Ohio Veterinary Med. Bd. v. Singh* (1998), 127 Ohio App.3d 23, 29, 711 N.E.2d 740, in which the First District Court of Appeals stated, "The element of surprise is obviously an important factor in conducting investigations to determine whether a veterinarian has violated a provision in R.C. Chapter 4741." As I cannot agree with the contrary interpretation, I respectfully dissent.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

———

Moscarino & Treu, L.L.P., William H. Falin, Edward S. Jerse, and Michael W. Matile, for appellees.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, Franklin E. Crawford, Deputy Solicitor, and Martine Jean, Assistant Attorney General, for appellant.